**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**CHERON HAYES,**

        **Plaintiff,**

**v.**                                    **Case No.  6:23-cv-252-ACC-EJK**

**DISNEY PARKS, EXPERIENCES**
**AND PRODUCTS, INC. and**
**DISNEY GIFT CARD SERVICES,**
**INC.,**

        **Defendants.**

---

## ORDER

This cause comes before the Court on Defendants Disney Gift Card Services, Inc. ("DGCS") and Disney Parks, Experiences and Products, Inc.'s ("DPEP") (collectively, "Defendants") Motion to Dismiss Plaintiff Cheron Hayes's Complaint. (Doc. 34). Hayes has filed a Response in Opposition (Doc. 44), and Defendants filed a Reply (Doc. 54). Thus, the Motion is ripe for review.[1]

---

[1] Hayes has also filed two notices of supplemental authority, which includes excerpts from a *Report on Past Practices of the Reedy Creek Improvement District* published by the Central Florida Tourism Oversight District (Doc. 57), and opposition responses filed by a Disney subsidiary, Walt Disney Parks and Resorts U.S., Inc., in a different lawsuit (Doc. 58). Defendants filed a motion to strike, arguing that the filings violate Middle District of Florida Local Rule 3.01(i) and are otherwise irrelevant. (Doc. 60). Since these supplemental authorities do not change the outcome of this Motion to Dismiss (Doc. 34), the Court denies as moot Defendants' motion to strike.

In her four-count Complaint, Hayes alleges that Defendants violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq.* ("Title VII"); the Americans with Disabilities Act, 42 U.S.C. §§ 12111, *et seq.* ("ADA"); Florida's Civil Rights Act, Fla. Stat. §§ 760.07, 760.10 ("FCRA"); and Florida's Constitution, Art. I, § 23. (Doc. 1). For the reasons below, the Court will grant Defendants' Motion.

## I.    BACKGROUND

### A. *Plaintiff Hayes's Employment History*

Hayes started working for Disney[2] in 2007. (Doc. 1 ¶ 46). Throughout her fourteen-year career, Hayes was "employed by [DGCS]," where she held various roles and was never subject to disciplinary action. (*Id.* ¶¶ 1, 46, 48). Hayes was first hired as a financial analyst supporting Parks Forecasting and Consolidation. (*Id.* ¶ 46). By 2008, Disney promoted her to senior financial analyst, where she supported the Coronado Springs Convention Resort. (*Id.*). Hayes later supported Disney's merchandise business. (*Id.*). Finally, in her most recent role, Hayes oversaw the company's $180 million gift card liability. (*Id.* ¶ 47). Her job, among many others, was materially altered in early 2020 when the company responded to the COVID-19 health crisis. (*Id.* ¶ 12).

---

[2] The Court recognizes that Hayes's use of the term "Disney" is ambiguous. As demonstrated in the first page of the Complaint, Hayes uses the term "Disney" to collectively refer to all Defendants. (Doc. 1). The only sensible way to read this defined term is under a theory that Hayes seeks to hold Defendants collectively responsible for all actions.

Disney closed its parks' doors in March 2020 in response to the COVID-19 pandemic. (*Id.*). While the company reopened nearly four months later, Hayes was not required to return because her role transitioned to fully remote work. (*Id.* ¶¶ 12–13, 49). Approximately one year after reopening, in July 2021, a senior executive from The Walt Disney Company ("TWDC")—the Disney parent entity—announced a new company policy requiring employees to receive the COVID-19 vaccine. (*Id.* ¶¶ 15, 49; Doc. 1-1 at 4). Upon Hayes's information and belief, DPEP had significant control over the design, implementation, and enforcement of the vaccine policy. (Doc. 1 ¶ 16). Despite being entirely remote, Hayes was subject to this policy. (*Id.* ¶ 50).

While Hayes was opposed to the COVID-19 vaccine on religious grounds, she became discouraged from seeking a religious exemption because she learned from other cast members that Disney was not approving them. (*Id.*). Instead, Hayes filed a medical exemption request, citing her prior adverse reaction to the influenza and shingles vaccines. (*Id.* ¶ 51). She included doctors' notes, which in part, advised that remote work and/or regular COVID-19 testing were reasonable alternatives for Hayes instead of getting vaccinated. (*Id.*; Doc. 1-1 at 26). However, neither note expressly exempted Hayes from receiving the vaccine. (Doc. 1-1 at 23, 26). Disney subsequently denied her request for alternative work arrangements. (Doc. 1 ¶ 52). Shortly after, on November 8, 2021, Disney terminated Hayes's employment. (*Id.* ¶ 53).

Later that month, on November 19, 2021, the Florida government passed legislation forbidding "vaccinate or terminate" policies. (*Id.* ¶ 20). That same day, Disney circulated an email to cast members informing them that the company was pausing its vaccine mandate. (*Id.* ¶ 21). Shortly after, Hayes learned that she was placed on a "rehire status." (*Id.* ¶ 54). Despite her persistent efforts to communicate with Disney regarding this rehire status, Hayes received little guidance. (*Id.*). Upon Hayes's information and belief, Disney rehired five cast members from her group following Florida's legislative change in November 2021. (*Id.*).

In early 2022, Hayes reapplied and successfully obtained a new job with Disney as a senior financial accounting analyst. (*Id.* ¶ 55). However, this new job was contingent upon Hayes receiving the COVID-19 vaccine. (*Id.* ¶ 56). This time, Hayes submitted both a religious and medical exemption—but both were inexplicably denied. (*Id.*). Disney later communicated to Hayes that "the company was unable to determine whether Ms. Hayes was prevented from receiving the COVID-19 vaccine due to a sincerely held religious belief, practice, or observance." (*Id.* ¶ 57).

Undeterred, Hayes applied for yet another position at Disney as a senior analyst for revenue management projects. (*Id.* ¶ 58). Again, Hayes was offered the position contingent upon receiving the COVID-19 vaccine.[3] (*Id.* ¶ 59). Hayes

---

[3] Hayes does not specify which Disney-related entity offered her the subsequent jobs working as a senior financial accounting analyst or as a senior analyst for revenue management

submitted another religious exemption request, explaining that she understood Florida law to prohibit such a vaccine requirement. (*Id.*). On September 26, 2022, a Disney recruiter informed Hayes that her religious exemption was denied. (*Id.* ¶ 60). In light of this, Hayes filed a grievance with the EEOC, which issued a notice to sue on September 30, 2022. (*Id.*).

### B. Procedural History

On June 29, 2022, plaintiffs Barbara Andreas, Stephen Cribb, and Adam Pajer sued defendants TWDC and DPEP in the Circuit Court of the Ninth Judicial Circuit in and for Osceola County, Florida. (*Andreas v. Walt Disney Co.*, No. 6:23-cv-107, Doc. 1-3). In their original Complaint, plaintiffs Andreas, Cribb, and Pajer asserted one count against defendants TWDC and DPEP under Florida law. (*Id.* at 25 (citing Fla. Stat. §§ 448.101, *et seq.*)). Thereafter, on December 23, 2022, the three original plaintiffs along with Steven Gibbons, Cheron Hayes, Cathryn Koepke, and Seth Schmidt collectively filed the First Amended Complaint, in which they asserted additional state and federal claims against TWDC and DPEP, as well as Walt Disney Parks and Resorts U.S., Inc. ("WDPR"), Reedy Creek Improvement District ("Reedy Creek"), DGCS, Disney Human Resources Services Co., LLC ("DHRS"), and Disney Vacation Club Management, LLC ("DVCM"). (*Andreas*, No. 6:23-cv-107, Doc. 1-1). On January 20, 2023, the defendants removed the case to this Court. (*Andreas*, No. 6:23-cv-107, Doc. 1 ¶ 4; Doc. 3).

---

projects.

In their First Amended Complaint, the plaintiffs generally alleged that the defendants wrongfully terminated their employment after the plaintiffs requested exemptions from defendants' COVID-19 vaccine mandates and otherwise objected to defendants' increased safety protocols for unvaccinated cast members. (*Andreas*, No. 6:23-cv-107, Doc. 1-1). At various points in time, the plaintiffs requested exemptions from the vaccine mandate and/or mask mandate based on their religious beliefs. (*Id.*). In total, the seven plaintiffs asserted nine claims against the seven defendants. (*Id.*). Because of the great variation in factual circumstances concerning each plaintiff, the Court severed the plaintiffs' claims on January 24, 2023, instructing each plaintiff to "pursue his or her claims only as they relate to the corporations relevant to his or her employment." (*Andreas*, No. 6:23-cv-107, Doc. 7 at 3–4).

On February 14, 2023, Hayes filed her Complaint against TWDC,[4] DGCS, DPEP, and Reedy Creek.[5] Hayes alleges claims for discrimination under Title VII (Count II); for discrimination under the ADA (Count III); for discrimination under the FCRA (Count I); and for violation of Florida's Constitutional Right to Privacy (Count IV). All but the Florida Constitutional Right to Privacy claim are before this Court.[6]

---

[4] Hayes voluntarily dismissed TWDC from this suit. (Docs. 61–62).
[5] The Court dismissed Reedy Creek from this suit on December 8, 2023. (Doc. 56).
[6] Hayes withdrew the Florida Constitutional claim in Count IV. (Doc. 67).

Defendants, as Hayes acknowledges, are foreign corporations registered to do business in Florida. (Doc. 1 ¶ 2). Defendants move to dismiss Hayes's Complaint on various grounds.

## II.    LEGAL STANDARD

For purposes of deciding a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), the Court accepts as true the factual allegations in the complaint and draws all reasonable inferences in the light most favorable to the plaintiff. *Randall v. Scott*, 610 F.3d 701, 705 (11th Cir. 2010). When reviewing a motion to dismiss, courts are generally bound "to the face of the complaint and attachments thereto." *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1368 (11th Cir. 1997).

"Generally, under the Federal Rules of Civil Procedure, a complaint need only contain 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *Randall*, 610 F.3d at 705 (quoting Fed. R. Civ. P. 8(a)(2)). However, the plaintiff's complaint must provide "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). Thus, the Court is not required to accept as true a legal conclusion merely

because it is labeled a "factual allegation" in the complaint; it must also meet the threshold inquiry of facial plausibility. *Id.*

A district court may dismiss a complaint with prejudice when granting leave to amend would be futile. *W. Sur. Co. v. Steuerwald*, 760 F. App'x 810, 814 (11th Cir. 2019).[7] If a more carefully drafted complaint could state a viable claim, a district court should give the plaintiff at least one chance to amend before dismissing with prejudice. *Id.*

### III.    ANALYSIS

#### A. *Shotgun Pleading*

Defendants contend that Hayes's Complaint must be dismissed for being an impermissible shotgun pleading. "Shotgun pleadings" refer to complaints that violate either Rule 8(a)(2) or Rule 10(b) of the Federal Rules of Civil Procedure. *Weiland v. Palm Beach Cnty. Sheriff's Office*, 792 F.3d 1313, 1320 (11th Cir. 2015). "The unifying characteristic of all types of shotgun pleadings is that they fail to one degree or another, and in one way or another, to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." *Id.* at 1323; *see Lampkin-Asam v. Volusia Cnty. Sch. Bd.*, 261 F. App'x 274, 277 (11th Cir. 2008) ("A complaint that fails to articulate claims with sufficient clarity to allow the defendant to frame a responsive pleading constitutes a 'shotgun pleading.'"). "[D]ismissal under Rules 8(a)(2) and 10(b) is appropriate where 'it is virtually

---

[7] Unpublished opinions of the Eleventh Circuit generally constitute persuasive, and not binding, authority. *See* 11th Cir. R. 36-2 and I.O.P. 6.

impossible to know which allegations of fact are intended to support which claim(s) for relief.'" *Weiland*, 792 F.3d at 1325 (emphasis omitted) (quoting *Anderson v. Dist. Bd. of Trs. of Cent. Fla. Cmty. Coll.*, 77 F.3d 364, 366 (11th Cir. 1996)).

> The Eleventh Circuit has delineated four categories of shotgun pleadings:
>
> (1) "a complaint containing multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint," (2) "a complaint that . . . is . . . replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action," (3) a complaint that fails to "separat[e] into a different count each cause of action or claim for relief," and (4) a complaint that "assert[s] multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against."

*Id.* at 1321–23.

Defendants argue that the Complaint is a shotgun pleading because it fails to clarify which conduct is attributable to which Defendant. In response, Hayes asserts that dismissal is only warranted in cases where it is virtually impossible to understand the claims—a standard Defendants apparently cannot satisfy. This conflict clearly touches on the fourth category of shotgun pleadings.

While it is clear which claims are brought against each Defendant, less clear is for which acts or omissions each Defendant is allegedly responsible. Surprisingly, very few of Hayes's allegations specify a particular Defendant by name. Instead, Hayes uses the broadly defined term *Disney* to encompass all Defendants.

Significantly, "nothing in the pleading rules prohibits lodging the same claim against multiple [d]efendants if they are all alleged to have participated in the same acts rising to the claim." *Whitehurst v. G & A Rest. Mgmt., Inc.*, No. 2:20-cv-67-MRM, 2020 WL 2062462, at *2 (M.D. Fla. Apr. 29, 2020). However, "unless it is possible that [all] [d]efendants could have engaged in the same conduct," a complaint that lumps together the defendants "will be found to be a shotgun pleading." *Norris v. Honeywell Int'l, Inc.*, No. 8:22-cv-1675-CEH-TGW, 2023 WL 6256183, at *4 (M.D. Fla. Sept. 26, 2023).

Complaints alleging that defendants operated jointly have survived a shotgun pleading challenge. *See id.* (finding that a complaint was not a shotgun pleading where plaintiff "adequately convey[ed] a theory of collective liability" between a parent corporation and its subsidiary regarding a vaccine policy); *Marino v. Spizzigo Enters., LLC*, No. 10-24391-CIV, 2021 WL 8894429, at *7 (S.D. Fla. Feb. 3, 2021) (finding that a complaint was not a shotgun pleading where plaintiff alleged that two defendants were "owned and/or controlled, directly or indirectly by" a third defendant).

Hayes uses the term Disney to refer to all Disney-related entities and argues that they "form an integrated enterprise." (Doc. 44 at 3). While this is far from a

model pleading,[8] Hayes has narrowly conveyed a theory of collective liability and survives Defendants' shotgun pleading challenge.

### B. Failure to State a Claim
#### 1. Employer-Employee Relationship

Defendants contend that all Hayes's remaining claims directed at DPEP should be dismissed because Hayes failed to plausibly allege that DPEP is her employer. (Doc. 34 at 13–14). In response, Hayes argues that DPEP can be liable under a theory of joint or integrated liability. (Doc. 44 at 3–4).

Title VII makes it unlawful for an "employer . . . to discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's . . . religion." 42 U.S.C. § 2000e–2(a)(1). Meanwhile, the ADA makes it unlawful for an employer to "discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." *Id.* § 12112(a).

An employment discrimination claim under Title VII "can only be brought by an employee against [her] employer."[9] *Peppers v. Cobb Cnty.*, 835 F.3d 1289, 1297

---

[8] Hayes variously and inconsistently uses the term Disney and makes little effort to specify Defendants' roles. That said, the Court makes no determination at this point regarding the sufficiency of Hayes's allegations.

[9] The Court will consider the Title VII and ADA claims together because the standards are the same. *See, e.g.*, *Huck v. Mega Nursing Servs., Inc.*, 989 F. Supp 1462, 1463 (S.D. Fla. 1997) ("[S]ince the language in Title VII was analogous to the ADA, the courts have used the Title VII cases as a guide for determining employee liability under the ADA."). This analysis will also simultaneously address Hayes's FCRA claim because the FCRA is generally interpreted as

(11th Cir. 2016). "To decide whether an entity is a qualified employer," the Eleventh Circuit has asked one "basic question: 'who (or which entity) is in control of the fundamental aspects of the employment relationship that gave rise to the claim.'" *Id.* (quoting *Lyes v. City of Riviera Beach*, 166 F.3d 1332, 1345 (11th Cir. 1999)). "This question requires consideration of the totality of the employment relationship." *Id.* In certain circumstances, courts have aggregated ostensibly separate entities as joint or integrated employers. *Id.* at 1298.

The joint and integrated employer determinations are fact specific and often more appropriate for disposition at summary judgment. *EEOC v. Princess Martha, LLC*, No. 8:22-cv-2182-CEH-AAS, 2023 WL 8544223, at *10 (M.D. Fla. Dec. 11, 2023). However, upon a motion to dismiss, the court must still evaluate whether a plaintiff has alleged enough facts to plausibly establish the requisite level of control for each test. *See id.*

To establish an integrated relationship, the Court must evaluate four factors: "(1) interrelation of operations, (2) centralized control of labor relations, (3) common management, and (4) common ownership or financial control." *Lyes*, 166 F.3d at 1342. Meanwhile, to establish a joint relationship, the court must find that the defendant was "in control of the fundamental aspects of the employment relationship that gave rise to the claim." *Id.* at 1345. In other words, "[w]hile the

---

consistent with Title VII. *Harper v. Blockbuster Entm't Corp.*, 139 F.3d 1385, 1387 (11th Cir. 1998).

[integrated] employer test looks at the overall relationships of the two entities, joint employer status is determined by focusing on the entities' relationships to a given employee or class of employees." *Peppers*, 835 F.3d at 1300 (quoting *Sandoval v. City of Boulder, Colo.*, 388 F.3d 1312, 1324 (10th Cir. 2004)).

Looking to the Complaint, Hayes's allegations fall short for both tests. Strikingly, the most discernible allegation regarding DPEP states that, "[u]pon information and belief," DPEP had "significant design and implementation authority as well as enforcement oversight regarding Disney's vaccine mandate in Florida." (Doc. 1 ¶ 16). This allegation, however, is conclusory and cannot support a finding of control required for an integrated relationship. *See Mann v. Palmer*, 713 F.3d 1306, 1315 (11th Cir. 2013) (disregarding conclusory allegations made "upon information and belief").

The only remaining allegations in Hayes's Complaint relevant to DPEP suggest that DPEP maintained email addresses associated with contact tracing and accommodations for COVID-19. (Doc. 1 ¶ 14; Doc. 1-1 at 28–29). Construing all reasonable inferences from these allegations in Hayes's favor justifies a finding that DPEP maintained some authority over COVID-19 policies. However, such a finding does not come close to satisfying the four-factor integrated employer test. For example, there are no facts that allow this Court to consider whether DGCS and DPEP centralize control of labor relations or share common management, ownership, or financial control. *Key v. Hyundai Motor Mfg., Ala., LLC*, No. 2:19-

CV-767-ECM, 2021 WL 3909663, at *7 n.4 (M.D. Ala. Aug. 31, 2021) (rejecting an integrated employer argument where "[p]laintiff has not pleaded enough facts to show the sufficient level of interrelation . . . [b]eyond conclusory assertions").

In her Response, Hayes argues that "DGCS is encompassed by" and "moves at the direction and will of DPEP." (Doc. 44 at 5). However, this too, is conclusory. In short, Hayes has not plausibly alleged that DPEP is an integrated employer with DGCS.

Turning to the joint employer test, Hayes's allegations suffer a similar fate. As previously noted, drawing all reasonable inferences in Hayes's favor only justifies a finding that DPEP had some control over the vaccine mandate and exemption policy. Such a finding does not salvage Hayes's claim.

In fact, a similar issue arose in *Norris v. Honeywell International Inc.*, No. 8:22-cv-1675-CEH-TGW, 2023 WL 6256183 (M.D. Fla. Sept. 26, 2023). There, a class of employees sued their direct employer and its corporate parent under Title VII and the ADA for religious discrimination related to the defendants' enforcement of COVID-19 vaccine and mask policies. *Id.* at *1. On a motion to dismiss, the employees argued that the corporate parent could be liable under a theory of joint liability. *Id.* at *22. Even though the employees plausibly alleged that the parent company "was involved in policies related to the vaccine mandate and the exemption process," the court nevertheless dismissed the discrimination claims against the parent company because the employees failed to plead that the parent company "was

involved in any of the specific adverse employment decisions" or that the parent company "was generally involved in its subsidiaries' hiring, termination, or payment." *Id.* at *24. Because Hayes has not alleged that DPEP was involved in any of the specific adverse employment decisions or that DPEP was generally involved in her hiring, termination, or payment, she has failed to plausibly allege a joint employer theory.

In short, Hayes's Complaint fails to plausibly allege that DPEP is an integrated or joint employer with DGCS. Because there are no alternative theories or plausible allegations to justify DPEP's liability, all remaining claims against DPEP are dismissed.

### 2. Title VII & FCRA Discrimination (Counts I & II)

Hayes alleges that Disney violated Title VII's discrimination provisions when it fired her and subsequently refused to hire her for not receiving the COVID-19 vaccine.[10] Specifically, Hayes alleges that Disney violated Title VII by "imposing a [COVID]-19 vaccine mandate" and by "fail[ing] to accommodate" her religious exemption. (Doc. 1 ¶¶ 67–69, 81–84). In response, DGCS argues that Hayes's Title VII claims must fail because she did not request a religious accommodation from the vaccine mandate before she was terminated and because she does not identify

---

[10] The Court will consider Hayes's Title VII and FCRA religious discrimination claims together because they are governed by the same requirements of proof and the same analytical framework. *Harper*, 139 F.3d at 1387.

the specific entities that are responsible for her failure to hire claims. (Doc. 34 at 14–15).

Given Hayes's allegations and supporting brief, the Court understands Hayes as alleging two claims: (1) a disparate treatment claim under a traditional theory and a reasonable accommodation theory, and (2) a disparate impact claim. The Court will address each in turn.

### a. Disparate Treatment

Title VII recognizes two causes of action: disparate treatment and disparate impact. The disparate treatment provision in Title VII makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual or otherwise to discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's . . . religion."[11] 42 U.S.C. § 2000e–2(a)(1); *see E.E.O.C. v. Abercrombie & Fitch Stores, Inc.*, 575 U.S. 768, 771 (2015). Disparate treatment claims may proceed under multiple theories, including traditional disparate treatment and reasonable accommodation. *Bailey v. Metro Ambulance Servs., Inc.*, 992 F.3d 1265, 1272 (11th Cir. 2021).

---

[11] Title VII defines religion to "include[] all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that he is unable to reasonably accommodate" a "religious observance or practice without undue hardship on the conduct of the employer's business." 42 U.S.C. § 2000e(j).

To state a prima facie case of disparate treatment under a traditional theory, plaintiff must show that "(1) she is a member of a protected class; (2) she was subjected to adverse employment action; (3) her employer treated similarly situated employees more favorably; and (4) she was qualified to do the job." *E.E.O.C. v. Joe's Stone Crab, Inc.*, 220 F.3d 1263, 1286 (11th Cir. 2000).

Hayes has failed to plead the third element. While Hayes argues in her Response brief that she alleged that "employees who did not seek religious accommodations were treated more favorably" (Doc. 44 at 14), this allegation is nowhere to be found in her Complaint. Further absent are any allegations claiming that another group was similarly situated to Hayes. Thus, Hayes has not plausibly alleged a disparate treatment claim under a traditional theory.

Hayes also seeks a disparate treatment claim under a reasonable accommodation theory. "To establish a reasonable[] accommodation claim of religious disparate treatment, a plaintiff must first set forth a prima facie case by showing that (1) [her] sincere and bona fide religious belief conflicted with an employment requirement, and (2) [her] employer took adverse employment action against [her] because of [her] inability to comply with the employment requirement or because of the employer's perceived need for [her] reasonable accommodation." *Metro Ambulance*, 992 F.3d at 1275. Ultimately, a plaintiff must show that "[her] need for an accommodation was a motivating factor in the employer's decision." *Abercrombie*, 575 U.S. at 772.

As discussed above, Hayes brings a reasonable accommodation claim against Disney for unlawfully terminating her employment and for failing to rehire her. Both are deficient.

Hayes's reasonable accommodation claim cannot be based on unlawful termination because she did not plausibly demonstrate a religious conflict with DGCS's vaccine mandate while she was employed by DGCS. Instead, Hayes requested a medical accommodation from DGCS's vaccine mandate based on her prior adverse reactions to the influenza and shingles vaccines. (Doc. 1 ¶ 51). In doing so, Hayes attached a doctor's letter which, notably, did not exempt her from the vaccine. (*Id.*). In short, these allegations are completely silent with respect to Hayes's religious conflict.

To cure this deficiency, Hayes relies on her allegation that it was "common knowledge in her office" that she was a devout Christian. (*Id.* ¶ 50; Doc. 44 at 7). This vague allegation, however, does not plausibly establish that Hayes's religious beliefs conflicted with DGCS's COVID-19 vaccine mandate, let alone that Hayes's need for a religious accommodation was a motivating factor in DGCS's decision to terminate her employment. *See Passmore v. 21st Century Oncology, LLC*, No. 3:16-cv-1094-J-34-PDB, 2018 WL 1738715, at *4 (M.D. Fla. Apr. 11, 2018) (dismissing a failure to accommodate claim because plaintiff failed to allege facts to demonstrate a religious conflict); *Norris*, 2023 WL 6256183, at *17 (dismissing failure to promote claims because plaintiffs did not sufficiently allege that their religious

conflict was a motivating factor in their employer's decision). Thus, Hayes has failed to state a claim for reasonable accommodation based on her termination from DGCS.

Meanwhile, Hayes's reasonable accommodation claim for failure to hire is more tenable. That is so because Hayes clearly alleges a religious conflict with the subsequent employment conditions requiring her to be vaccinated. Nevertheless, DGCS correctly argues that Hayes has failed to state a claim because she has not identified the entities directly responsible for her subsequent employment offers. (Doc. 34 at 14). In response, Hayes concedes that she does not know which Disney entities allegedly failed to hire her. (Doc. 44 at 8 n.3, 15 n.6). So, Hayes relies on her collective use of the term Disney. (*Id.*).

Hayes's reliance is unavailing. While her collective terminology is feasible regarding her alleged unlawful termination—where she acknowledged DGCS as her employer—it cannot sustain a claim for failure to hire because she did not identify the responsible entities with any particularity. Further, the parties have been permitted to engage in discovery since March 9, 2023. (Doc. 28). Hayes has not used the discovery process to identify the correct entities and amend the Complaint accordingly. Thus, Hayes has failed to state a claim for religious disparate treatment under Title VII and the FCRA.

### b. *Disparate Impact*

Disparate impact claims challenge "practices that have a disproportionately adverse effect on [a protected group] and are otherwise unjustified by a legitimate

rationale." *Texas Dep't of Hous. & Cmty. Affs. v. Inclusive Cmtys. Project, Inc.*, 576 U.S. 519, 524–25 (2015) (internal quotations omitted). The disparate impact provision in Title VII makes it unlawful for an employer to "limit, segregate, or classify his employees . . . in any way which would deprive . . . any individual of employment opportunities . . . because of such individual's . . . religion." 42 U.S.C § 2000e-2(a)(2); *see Abercrombie*, 575 U.S. at 771. To establish a prima facie disparate impact claim, a plaintiff must show a (1) "facially neutral, employment practice," (2) "an identified statistical disparity" for a protected group, and (3) a causal connection. *Joe's Stone Crab*, 220 F.3d at 1268.

Hayes argues that she satisfied the elements of a disparate impact claim because the vaccine mandate applied to all employees, DGCS denied her accommodation request, and DGCS terminated her for noncompliance. (Doc. 44 at 14–15). Meanwhile, DGCS argues that this claim must fail because Hayes has not identified an adverse effect on a protected group and because she confuses the elements of her claim. (Doc. 34 at 16). Hayes's claim for disparate impact is insufficient for multiple reasons.

First, Hayes's argument that Disney's vaccine mandate had a disparate impact is unsupported. In a typical disparate impact claim, a plaintiff must "offer[] statistical evidence sufficient to show that the challenged practice resulted in prohibited discrimination." *Krop v. Nicholson*, 506 F. Supp. 2d 1170, 1176 (M.D. Fla. 2007) (internal quotations omitted); *see also Ricci v. DeStefano*, 557 U.S. 557, 587 (2009)

(describing the "prima facie case of disparate[] impact liability" as "essentially, a threshold showing of a significant statistical disparity"). Here, Hayes's Complaint is devoid of any allegations to suggest a statistical disparity for her protected class.

Second, Hayes argues that her disparate impact claim is supported by the fact that Disney denied her accommodation request. (Doc. 44 at 15). However, this reasoning is fundamentally flawed because Hayes only submitted a medical accommodation request before DGCS terminated her employment.[12] An alleged improper handling of a medical exemption request simply cannot justify a religious discrimination claim.

This reasoning is also deficient because it demonstrates an individualized effect, rather than a disparate impact on a protected group. In short, the Court cannot find that Hayes's disparate impact claim is plausible where her allegations do nothing to illustrate how her protected group was affected, if at all, by the vaccine mandate or whether that impact created a significant disparity compared to a non-protected group. *Rodriguez v. Osceola Cnty. Sch. Bd.*, No. 619-cv-241-CEM-LHP, 2019 WL 13274291, at *2 (M.D. Fla. July 18, 2019) (dismissing a disparate impact claim, in part, because plaintiff failed to allege that defendant's actions impacted "any portion of a protected class beyond plaintiff").

---

[12] To the extent Hayes directs this claim against Defendants for actions taken after DGCS terminated her employment, the claim fails because—as discussed above—Hayes has not identified the responsible Disney entities.

Third, Hayes's framing of her protected class also stands on precarious ground. Hayes's protected group appears not to be based on a particular faith or subgroup, but rather a specific religious belief—namely, opposition to the COVID-19 vaccine. As one court explained:

> If a plaintiff could narrowly define its class based on its particular religious belief, rather than the broader religious faith or group to which it belongs, then disparate[] impact claims would have a nearly limitless reach. This is because any policy impacting a plaintiff's specific religious belief would generally impact 100% of the members of a class defined by that belief, which would virtually always amount to a disproportionate impact as compared to those falling outside the class. For example, a Jewish man impacted by a policy affecting a belief rooted in his idiosyncratic, personalized interpretation of Judaism could claim disparate impact even though no other Jewish people hold that belief.

*Coral Ridge Ministries Media, Inc. v. Amazon.com, Inc.*, 406 F. Supp. 3d 1258, 1305 n.36 (M.D. Ala. 2019), *aff'd*, 6 F.4th 1247 (11th Cir. 2021); *see also Dunbar v. Walt Disney Co.*, No. CV 22-1075-DMG (JCX), 2022 WL 18357775, at *3 (C.D. Cal. July 25, 2022) (rejecting plaintiff's disparate impact claim based on a theory that his protected group included "all those who share a religious belief against vaccinations").

As a final matter, Hayes argues that her claims should survive dismissal because she is not required to establish a prima facie case of each type of discrimination. (Doc. 44 at 13). She cites *Booth v. GTE Federal Credit Union* for the proposition that "the prima facie case for discriminatory employment decisions 'is an evidentiary standard, not a pleading requirement.'" (*Id.* (citing *Booth v. GTE*

*Fed. Credit Union*, No. 8:21-cv-1509-KKM-JSS, 2021 WL 5416690, at *2 (M.D. Fla. Nov. 20, 2021) (quoting *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 510 (2002)))). Hayes's reliance on *Booth* is unavailing.

The Eleventh Circuit has held that "[e]ven if a plaintiff need not plead a prima facie case to survive dismissal, the complaint must satisfy *Iqbal*'s 'plausible on its face' standard, and the allegations must be sufficient to 'raise a right to relief above the speculative level' under *Twombly*." *McCullough v. Bd. of Regents of the Univ. Sys. of Ga.*, 623 F. App'x 980, 983 (11th Cir. 2015); *see Edwards v. Prime, Inc.*, 602 F.3d 1276, 1300 (11th Cir. 2010) (noting, after *Twombly* and *Iqbal*, that a plaintiff is required to allege a prima facie case of discrimination). Based on the plausibility pleading standard, and having drawn all reasonable inferences in Hayes's favor, she has not alleged factual content that allows the Court to draw a reasonable inference that DGCS is liable for religious discrimination.

In summary, Hayes has failed to state a claim for disparate treatment and disparate impact because she has not alleged enough factual content to render either claim plausible. Hayes's discrimination claims under Title VII and the FCRA are dismissed without prejudice and without leave to amend.[13]

---

[13] The Court denies Hayes's request for leave to amend because Hayes has not properly raised the request under Federal Rule of Civil Procedure 15(a)(2) and has not made the requisite showing under Rule 16(b). Instead, Hayes improperly included her request for leave to amend in her opposition brief. *Newton v. Duke Energy Fla., LLC*, 895 F.3d 1270, 1277 (11th Cir. 2018) ("[W]here a request for leave to file an amended complaint simply is imbedded within an opposition memorandum, the issue has not been raised properly."); *Wright v. Gilead Scis., Inc.*, No. 3:20-cv-1026-J-34PDB, 2021 WL 641327, at *1 (M.D. Fla. Jan. 11, 2021) ("[A] request for

### 3. *ADA Discrimination (Count III)*

Hayes alleges that Disney violated the ADA by enforcing a policy based on her perceived disability as an unvaccinated employee. In particular, Hayes alleges that Disney engaged in a prohibited employment practice by imposing a COVID-19 vaccine mandate, denying her medical accommodation, and by terminating her employment for noncompliance. (Doc. 1 ¶¶ 95–97). By enforcing rules on employees who did not get vaccinated, Hayes alleges that Disney perceived those individuals as disabled and unable to complete their jobs. (*Id.*) In Hayes's words, Disney treated her as though she was "a continually contagious vector[] of disease and dangerous." (*Id.* ¶ 99). In response, DGCS argues that Hayes's ADA claim must fail because susceptibility to COVID-19 is not a disability within the terms of the ADA. (Doc. 34 at 17).

The ADA prohibits employers from discriminating "against a qualified individual on the basis of disability." 42 U.S.C. § 12112(a). "To establish a prima facie case for disability discrimination, a plaintiff must produce sufficient evidence to permit a jury to find that she: (1) is disabled, (2) is a qualified individual, and

---

affirmative relief, such as a request for leave to amend a pleading, is not properly made when simply included in a response to a motion."). Additionally, Hayes has not made a "good cause" showing, which is required under Rule 16(b) when a party seeks to amend a pleading after the deadline has passed. *Regions Bank v. Kaplan*, No. 8:12-cv-1837-T-17MAP, 2015 WL 13704669, at *1 (M.D. Fla. Sept. 24, 2015) ("When leave to amend is sought after the deadline to amend the pleadings has passed, the movant must . . . show 'good cause' under Federal Rule of Civil 16(b) in order to obtain the right to amend."). Hayes's deadline to amend the pleading passed on May 31, 2023. (Doc. 29). While the Court gave Hayes leave to file a motion to amend her Complaint by June 30, 2023 (Doc. 40), she failed to do so.

(3) was discriminated against because of her disability*." Lewis v. City of Union City, Ga.*, 934 F.3d 1169, 1179 (11th Cir. 2019) (emphasis omitted). Under the ADA, disability is defined as (1) "a physical or mental impairment," (2) "a record of such an impairment," or (3) "being regarded as having such an impairment." 42 U.S.C. § 12102(1).

Hayes relies on the third category. (Doc. 1 ¶ 92 (quoting 42 U.S.C. § 12102(3))). The ADA provides that "an individual meets the requirement of 'being regarded as having such an impairment' if the individual establishes that he or she has been subjected to an action prohibited under this chapter because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity." 42 U.S.C. § 12102(3)(A). This section does not apply to "impairments that are transitory and minor." *Id.* § 12102(3)(B).

Hayes's "regarded as" disability theory fails as a matter of law. The Eleventh Circuit in *EEOC v. STME, LLC* affirmed dismissal of an ADA claim under 42 U.S.C. § 12102(1)(C) on the grounds that the ADA does not apply to potential future disabilities. 938 F.3d 1305, 1311 (11th Cir. 2019). The Eleventh Circuit rejected plaintiff's argument that her employer unlawfully regarded her as having a disability because of her potential future exposure to a virus. *Id.* at 1315. In doing so, the Eleventh Circuit reasoned that the ADA only applies to "current, past, or perceived disabilit[ies]"—it does not "extend to an employer's belief that an employee might contract or develop an impairment in the future." *Id.*

Multiple courts have applied this reasoning to reject ADA claims based on potential susceptibility to COVID-19 and the status of being unvaccinated. *See Norris*, 2023 WL 6256183, at \*9 (reasoning that an "unvaccinated status is not a disability under the ADA" because "the potential to contract COVID-19" is "a future impairment rather than an existing one"); *Kim v. PGA TOUR*, No. 3:23-cv-441-TJC-JBT, 2024 WL 280297, at \*5 (M.D. Fla. Jan. 25, 2024) (rejecting an ADA claim premised on an employer's alleged perception that employees were "susceptible to COVID-19" because of their unvaccinated status).

In response, Hayes relies on *Booth v. GTE Federal Credit Union* to show that COVID-19 is a non-transitory non-minor impairment under the ADA. (Doc. 44 at 15–16). However, Hayes's reliance is misplaced. *Booth* is distinguishable for the simple reason that *Booth* addresses a current perceived impairment—not a potential future impairment. The plaintiff in *Booth* alleged a perceived disability based on her then-existing COVID-19 symptoms. 2021 WL 5416690, at \*3. This critical allegation is nowhere to be found in Hayes's Complaint. So, *Booth* is consistent with *STME* and is inapplicable to Hayes's case.[14]

---

[14] Also, numerous courts have departed from *Booth*. *See e.g.*, *McCone v. Exela Techs.*, Inc., No. 6:21-cv-912-CEM-DCI, 2022 WL 801772, at \*4 (M.D. Fla. Jan. 14, 2022), *report and recommendation adopted*, No. 6:21-cv-912-CEM-DCI (M.D. Fla. Mar. 15, 2022) (dismissing an ADA claim "because being infected with COVID-19, standing alone, does not meet the ADA's definitions of disability or impairment"); *Sharikov v. Philips Med. Sys. MR, Inc.*, 659 F. Supp. 3d 264, 279 (N.D.N.Y. 2023) ("Courts have generally held that an employer perceiving a plaintiff as having COVID-19, without the plaintiff enumerating specific symptoms or long-term effects, does not constitute 'regarded as' disabled under the ADA."); *Johnson v. Mount Sinai Hosp. Grp., Inc.*, No. 22-CV-2936, 2023 WL 2163774, at \*6 (E.D.N.Y. Feb. 22, 2023) (dismissing an ADA claim

In short, Hayes's ADA claim clearly rests on the theory that DGCS perceived Hayes as disabled for being unvaccinated from COVID-19. (*See* Doc. 1 ¶ 95 ("Disney[] perce[ived] [that Hayes's] disability relat[ed] to or ar[ose] from [her] medical status [of being unvaccinated].")). In accordance with Eleventh Circuit precedent, an unvaccinated COVID-19 status only suggests a potential future impairment, not an existing one. Because the ADA does not protect potential future impairments, Hayes has no rights under the ADA and cannot state a claim. *See STME*, 938 F.3d at 1321 (affirming that an amendment to an ADA claim would be futile because an employee with a potential future impairment "had no rights under the ADA").[15] Since amendment would be futile, Hayes's ADA discrimination claim is dismissed with prejudice.[16]

---

because "having COVID-19" is not a "transitory and minor" condition).

[15] Further, Hayes's argument that Defendants' vaccine mandate violated the ADA fails because the policy was applied to all employees. Accepting Hayes's argument would require the Court to infer that Defendants perceived all its employees as disabled before receiving the vaccine. This inference is, of course, implausible. *Speaks v. Health Sys. Mgmt., Inc.*, No. 5:22-CV-00077-KDB-DCK, 2022 WL 3448649, at *5 (W.D.N.C. Aug. 17, 2022) ("[I]nferring that the [employer] classified [the employee] as impaired by requiring her to become vaccinated or seek an exemption would mean that [the employer] considered all its employees to have an 'impairment,' which is of course not a plausible inference . . . .").

[16] Hayes also couches a perceived disability claim within her FCRA discrimination claim in Count I. (Doc. 1 ¶¶ 66–69, 71). This practice notably offends the "one-claim-per-count rule." *Kennedy v. Bell S. Telecomms., Inc.*, 546 F. App'x 817, 818, 820 (11th Cir. 2013). Nevertheless, the Court's analysis of Hayes's ADA discrimination claim in Count III applies with equal force to her FCRA disability allegations. *Holly v. Clairson Indus., L.L.C.*, 492 F.3d 1247, 1255 (11th Cir. 2007) ("[D]isability-discrimination claims under the FCRA are analyzed using the same framework as ADA claims."). For the above reasons, Hayes's FCRA disability claim is also dismissed with prejudice.

Based on the foregoing, it is ordered as follows:

1.     Defendants' Motion to Dismiss Hayes's Complaint (Doc. 34) is **GRANTED**. Counts I and II are dismissed without prejudice and without leave to amend. Count III is dismissed with prejudice.

2.     Defendants' Motion to Strike Hayes's Supplemental Authorities (Doc. 60) is **DENIED** as moot.

3.     The clerk is **DIRECTED** to close the file.

**DONE** and **ORDERED** in Chambers, in Orlando, Florida on March 21, 2024.

ANNE C. CONWAY
United States District Judge

Copies furnished to:

Counsel of Record